**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DAVID AZAR,**

                **Plaintiff,**

**-vs-**                                                          **Case No. 6:09-cv-400-Orl-31KRS**

**NATIONAL CITY BANK,**

                **Defendant.**

_____

# ORDER

This matter comes before the Court on the Motion to Dismiss the Second Amended Complaint (Doc. 69) filed by the Defendant, National City Bank ("NCB") and the response (Doc. 73) filed by the Plaintiff, David Azar ("Azar").

**I.    Background**

Azar, who is proceeding *pro se*, is a lawyer admitted to practice in Florida. According to the allegations of the Second Amended Complaint, which are accepted as true for purposes of resolving the instant motion, Azar developed a relationship, beginning in 2002, with a bank that was eventually succeeded by NCB.[1] From 2002 to 2007, Plaintiff opened various accounts there, obtained loans and otherwise fulfilled his banking needs. According to Plaintiff, he reposed confidence in Defendant to make "good and proper decisions" concerning his banking needs (Doc. 64 at 10).

---

[1] For ease of reference, this opinion will refer to both banks as "NCB".

In February 2005, Plaintiff contracted to buy a single-family investment property in Melbourne Beach for $240,000. He sought 100 % financing from NCB. To accommodate Plaintiff's request, Defendant agreed to provide an 80 % first mortgage loan on the subject property and a $48,000 home equity loan on Plaintiff's residence to cover the balance.[2] This loan was later increased to $75,000 to provide Plaintiff with funds to refurbish the investment property.

Approximately one year later, Plaintiff sought to restructure his debt. After discussing Plaintiff's desire to lower his monthly payments, the bank agreed to roll the $75,000 home equity loan into his existing first mortgage loan. The bank approved a refinanced loan of $329,600, secured by a first mortgage dated June 18, 2006.

As the economy faltered, Plaintiff began having business setbacks and required additional financing. Defendant agreed to loan Plaintiff an additional $36,500, secured by a home equity (second) mortgage, based on the bank's appraisal of Plaintiff's home. By October of 2008, Plaintiff could no longer make monthly payments on the bank loans, and the loans went into default.

Plaintiff then brought this action in state court in January 2009, seeking to cancel the notes, rescind the mortgages, and restructure the terms of the mortgage indebtedness based upon his existing ability to pay. Plaintiff also sought unspecified "actual monetary damages," attorney's fees, and "other equitable relief." The basis for Plaintiff's claims was that the bank should not have loaned him the money because it knew or should have known that he would not be able to repay it.

---

[2]Plaintiff's residence was encumbered by a first mortgage loan of $230,000.

The case was removed to this Court on March 3, 2009. (Doc. 1). On April 22, 2009, the Court dismissed the Complaint, finding that Plaintiff's allegations were "patently implausible." (Doc. 33 at 1). On May 5, 2009, Azar filed his Amended Complaint (Doc. 34). The Court subsequently dismissed that pleading but, for reasons not relevant to the instant motion, that dismissal was vacated and Azar was granted leave to file a Second Amended Complaint, which he did on August 4. (Doc. 64).

**II.     Legal Standards**

Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 35 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), this Court must view the complaint in the light most favorable to the Plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

**III. Analysis**

In his original Complaint (Doc. 1), Plaintiff alleged (1) that a fiduciary relationship had developed between himself and the bank personnel and (2) that this relationship was breached when Defendant loaned him money without reasonably determining his ability to repay it.[3] Azar asserted six separate claims[4] – breach of fiduciary duty, negligence, negligent misrepresentation, fraudulent inducement, fraud, and deceptive and unfair business practices – but each claim was based on the notion that the bank had a duty not to loan him the money, and that the bank somehow wronged him by doing so. In dismissing the Complaint, the Court noted that Plaintiff's allegations were insufficient to bring the case within the limited line of cases that impose a fiduciary liability upon a bank in connection with a loan to its customer. (Doc. 33 at 1).

Plaintiff's Second Amended Complaint is much the same. The deceptive and unfair business practices claim has been deleted. However, relying upon substantially similar factual allegations, he again asserts that Defendant breached a fiduciary duty to him (Count V), committed fraud (Count I), fraudulently induced the loans (Count II), fraudulently misrepresented to Plaintiff that he was "qualified" to borrow the money (Count III) and was negligent in making the loans to Plaintiff (Count IV).[5]

---

[3]For example, in Paragraph 34, Plaintiff alleges that "the Defendant failed to properly analyze and determine the personal financial condition of the Plaintiff prior to approving and closing on said loans."

[4]Azar also asserted a count titled "Injunctive Relief," in which he sought to prevent NCB from foreclosing on his house. (Doc. 8 at 14).

[5]Plaintiff again seeks injunctive relief (Count VI) to prohibit the bank from foreclosing on his home.

**Fiduciary Duty Claim (Count V)**

Under Florida law, the elements of a claim for breach of fiduciary duty are: "the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). There are numerous problems with this claim, but the most obvious one involves the existence of a fiduciary duty. The Second Amended Complaint does not establish that Azar and NCB were in a fiduciary relationship. As noted previously, a long-standing business relationship between a bank and its customer, without more, does not create a fiduciary relationship. *Azar v. NCB*, 2009 WL 1107753 (M.D.Fla., April 22, 2009). And the fact that one party trusted another, without more, does not create a fiduciary relationship. *American Honda Motor Co., Inc. v. Motorcycle Information Network, Inc.*, 390 F.Supp.2d 1170, 1179 (M.D.Fla. 2005) (citing cases). Azar has not asserted anything more than a longstanding relationship between himself and the bank and his trust in the bank's employees to guide him in making financial decisions. Even accepting the allegations of the Second Amended Complaint as true, the relationship between the Plaintiff and the Defendant was nothing more than an arm's-length, lender-borrower relationship, and it did not result in an obligation on the bank's part to act like a fiduciary – to give advice and act for Azar's benefit. *Jaffe v. BOA*, 2009 WL 2567488 (S.D.Fla. August 18, 2009). Accordingly, Count V will be dismissed, with prejudice.

**Negligence Claim (Count IV)**

Plaintiff alleges that NCB failed to follow sound banking practices in processing his loans and that had it done so, it would have known that he was not qualified to borrow the money. The elements of a negligence claim under Florida law are: (1) a legal duty on the part of the defendant to protect the plaintiff from particular injuries; (2) the defendant's breach of that duty; (3) the

plaintiff's injury being actually and proximately caused by the breach; and (4) the plaintiff suffering actual harm from the injury. *Zivojinovich v. Barner*, 525 F.3d 1059, 1067 (11th Cir. 2008). Plaintiff infers the existence of a duty on NCB's part to prevent him from borrowing too much money from certain FDIC regulations that govern the bank's lending policies. Whatever duty the bank might have to follow the FDIC regulations, Azar has not cited any authority that would support an extension of this duty to borrowers such as himself (or that would support providing borrowers with, in effect, a private right of action to enforce those regulations).

Plaintiff also contends that, even in the absence of the FDIC regulations, the bank had a duty to process his loan application properly, and its failure to do so harmed him. In support, he relies on *Jacques v. First National Bank of Maryland*, 515 A.2d 756 (Md. 1986). In that case, a bank improperly processed the plaintiffs' mortgage loan application and determined that they were only qualified to borrow a sum that was significantly less than the sum they had originally sought, thereby forcing the plaintiffs to secure more expensive substitute financing. *Id.* at 757-58.[6] After the plaintiffs sued the bank for negligence, the Maryland Supreme Court found that the bank, "under the particular facts of this case," owed the plaintiffs a duty to use due care in processing their loan application. *Id.* at 756.

The particular facts that led to the finding of a duty in *Jacques* are not present in the instant case. In *Jacques*, the bank knew that the sales contract entered into by the plaintiffs required them to either (1) proceed to closing with whatever sum they were able to obtain from the bank or (2)

---

[6]The bank had also mistakenly told the plaintiffs they had qualified for a larger amount, later notifying them that they only qualified for a much smaller amount – all at time when interest rates were "dramatically escalat[ing]." *Id.* at 757-58.

forfeit their $10,000 deposit. *Id.* at 763. In the words of the *Jacques* court, the bank knew that it was undertaking a "special responsibility" when it accepted the plaintiffs' loan application for processing. *Id.* The *Jacques* court relied on the bank's knowledge of the consequences to the plaintiffs in determining that the bank had a duty to use due care in carrying out this "special responsibility". In the instant case, Plaintiff has not asserted that any such special circumstances existed or that NCB was aware of them if they did.

In addition, even if the facts in the instant case were identical to the facts in *Jacques*, it does not appear that the same result would apply here. In determining that the bank in *Jacques* had a duty toward the plaintiffs, the court first found that the bank had entered into a contract with the plaintiffs to process their loan application, and had implicitly promised to do so with due care. *Id*. at 761-62. Under Florida law, in contrast, the economic loss rule would bar a negligence claim for the alleged breach of that implied promise. *See*, *e.g.*, *Weimar v. Yacht Club Point Estates, Inc.*, 223 So. 2d 100, 103 (Fla. 4th DCA 1969) (holding that no cause of action in tort can arise from a breach of a duty existing by virtue of a contract).[7] Presumably, this is why, although the decision is more than 20 years old, the Court has not found any cases in which a Florida state or federal court has relied upon *Jacques*. Plaintiff's negligence claim will be dismissed, with prejudice.

---

[7]The *Jacques* court found that considerations such as requirements of venue and limitations on the bringing of actions made it desirable to provide plaintiffs with a choice of either a contract action or a tort action. *Jacques*, 515 A.2d at 765.

**The Fraud Claim (Counts I, II and III)**

Although stated separately, the Plaintiff's three fraud claims are essentially one claim, the crux of which is Plaintiff's contention that he was mislead by the bank into accepting a larger loan than he could repay. The elements of a fraud claim under Florida law are: (1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party. *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984). In his response to the motion to dismiss, Plaintiff contends that the pertinent statement is set forth in paragraphs 39 and 40 of the Second Amended Complaint. (Doc. 73 at 3).

The only false statement referred to in either of those paragraphs is an assertion that, during the application process, employees of the Defendant "intentionally falsified the income of the Plaintiff on both loan applications by reporting Plaintiff's income to be three times his actual income." (Doc. 64 at 7-8).[8] That false statement was intended to induce *the lender* to act, not

---

[8]Those two paragraphs read as follows:

39. In 2006 and 2007 when Plaintiff applied for the subject loans, Chris Graham and Gloria Olsen reviewed the income tax returns of Plaintiff, his credit score and property appraisal. Based upon the same and with knowledge of the Bank's real estate underwriting policies, Ms. Olsen and Mr. Graham knew factually that Plaintiff could not qualify for the said loans and should have been rejected his applications.

40. However, during the applications stage before each loan closed in 2006 and 2007, Defendant's said employees intentionally falsified the income of the Plaintiff on both loan applications by reporting Plaintiff's income to be three times his actual income.

(Doc. 64 at 7-8).

Azar. Azar's fraud claim must therefore fail. Moreover, Azar cannot plausibly argue that he relied in any way on a misrepresentation of a fact that was known to him – his own income. (A further barrier to Azar's claimed reliance is his assertion in the next paragraph that he was unaware that Graham and Olsen had falsified his income.) (Doc. 64 at 8).

Even setting aside the fundamental problem that the "injury" to Azar resulting from the alleged misconduct is that he got precisely the loan he had requested, and setting aside the fact that it makes no sense for the bank to force money upon someone not believed to be able to repay it, despite multiple efforts, Azar has not stated a viable fraud claim. The fraud claims will therefore be dismissed with prejudice.

Accordingly, it is hereby

**ORDERED** that the Motion to Dismiss the Second Amended Complaint (Doc. 69) filed by the Defendant, National City Bank, is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk is directed to close the case.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 26, 2009.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE